**BURCH & CRACCHIOLO, P.A.**
702 E. OSBORN ROAD, SUITE 200
PHOENIX, AZ 85014
TELEPHONE 602.274.7611

Susanne E. Ingold, SBA #019143
singold@bcattorneys.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Radford,<br><br>    Plaintiff,<br><br>v.<br><br>Berg Homes, LLC dba Berg Group Home, a limited liability company; and Connie Schwichtenberg, an Arizona resident,<br><br>    Defendants. | Case No.  2:18-CV-00287-JJT<br><br>**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Defendants Berg Homes, LLC, dba Berg Group Home, and Connie Schwichtenberg (collectively "Berg Group Home" or "Defendants"), by and through counsel undersigned, hereby respond to Plaintiff's Motion for Summary Judgment. This response is supported by the following Memorandum of Points and Authorities and Controverting and Separate Statement of Facts filed herewith.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   FACTUAL BACKGROUND**

Berg Group Home was an assisted living facility that provides services to people in need, specifically disabled adults. In 2009, Plaintiff was hired as a caregiver, an hourly employee, prior to being promoted to Program Manager ("Manager") in 2013 with additional responsibilities, increased wages, and private living quarters during his time off during the week. (See Defendants' Separate Statement of Facts (SSOF) at ¶ 1.) Plaintiff was the only Manager, an exempt position, at the only group home that Berg

Homes LLC owned and operated and his schedule varied week to week. (*Id.* at ¶¶3-4.)

As Manager, Plaintiff was paid a salary for performing principal duties that were directly related to management and business operations of Berg Group Home. (*Id.* at ¶4.) He was responsible for supervising the delivery of services to children and adults with developmental disabilities, as well as the elderly and he provided assistance with living skills development, health maintenance and medication administration, person care and behavioral development. (*Id.*) As Program Manager, Plaintiff also performed the key duties, including but not limited to the following:

> Program management – ensuring that the program is operating effectively and that required activities are conducted; documenting that the program follows states rules and guidelines; maintaining consumer files and records; creating teaching and behavior treatment plans; directing the spending of program money; reporting facility and vehicle maintenance issues; responding to consumer and program emergencies.

> Staff management – supervising the staff and caregivers and directing their activities with consumers; scheduling the staff to meet the needs of the program and ensuring that shifts are covered; hiring and firing of staff and caregivers; evaluating staff and performing staff evaluations; disciplining staff members; training on consumer and program activities; collecting, entering and auditing staff timesheets.

> Health maintenance – providing care and assistance to promote good health; helping consumers receive medical care and communicating with medical professional; administering medications according to physician instructions; recording information regarding health events, condition and status.

> Operational support – maintaining cleanliness of program; driving

company vehicle to transport consumers to their activities; completing tasks that are beyond the consumer's abilities; following policies and procedures for handling money.

(*Id.* at ¶5.)

Plaintiff worked autonomously to create and oversee his own schedule and could make any changes to it that he saw fit with full autonomy. (*Id.* at ¶6.) He created work schedules for other staff and caregivers and approved time-off requests. (*Id.*) He interviewed staff candidates for employment and supervised all staff. (*Id.*) Plaintiff also had the ability to bind Berg Homes financially by entering into contracts for services, whenever necessary. (*Id.*)

He also had discretion to discipline or terminate Direct Care Workers (DCW's) when necessary. (*Id.* at ¶7.) He managed Client records and ensure DCW's were documented correctly and met DD policy and guidelines. (*Id.*) He ensured medication were ordered, checked in and stored property, as well as properly documented by DCWs Coordinate client health care and Behavioral health needs. (*Id.*) He maintained client funds and communicated with Clients' families and various others. (*Id.*)

With regard to specific duties, Plaintiff was responsible for the following for Berg Group Home:

a) Hiring;
b) Compensation of employees;
c) Control over daily activities of the group home;
d) Management of the group home and its employees;
e) Discipline of employees;
f) Termination of employees[1];
g) Work schedules for employees; and
h) Payroll.

---

[1] Though Plaintiff had authority to terminate other employees, it was not necessary to terminate anyone since Berg Group Home had such low turnover. All staff at Berg Group Home reported to Plaintiff. (*Id.* at ¶9.)

3

(*Id.* at ¶8.)

Plaintiff's compensation structure was arrived at through discussion, negotiation and mutual agreement. (*Id.* at ¶1.) The position of "manager" and compensation for the position was established prior to Plaintiff's employment and promotion by outlining the duties and responsibilities for the position and comparing with the data provided by the Department of Labor as to exempt employees and factors required to be exempt, as well as the advice of counsel. (*Id.*)

As Program Manager, Plaintiff was paid a salary for performing principal duties that were directly related to management and business operations of Berg Group Home. (*Id.* at ¶13.) He performed these duties and was required to use his own discretion and judgment on matters of significance. (*Id.*)

As part of their initial appearance and filing in this case, Defendants expressly pled the defense of "exemption" their Answer dated March 16, 2018. (*Id.* at ¶14.) In their Answer, Defendants also affirmatively denied Plaintiff's alleged "primary job duties" and also denied that Plaintiff was a "non-exempt employee." (*Id.* at ¶15.) Two months later, Defendants further pled and identified their exemption defense via the parties' Joint Case Management Report, where Defendants provided the following "brief statement of the factual and legal basis" for their *defenses*:

> *Defendants:* Plaintiff was employed with Berg Group Home and was paid in full for all hours worked. **Plaintiff's duties included management and supervision, as well as exercising discretion and independent judgment on matters of significance. Thus, Plaintiff was employed in an administrative capacity and the FLSA's overtime requirements do not apply.**

(*Id.* at ¶16.) As such, Plaintiff has been on notice of Defendants' position that Plaintiff was subject to the "administrative exemption" throughout this entire case.

On June 15, 2018, less than a month after the parties filed the Joint Case Management Report, Defendants provided Plaintiff with additional detailed factual bases for their exemption defense through verified discovery responses to Plaintiff's

4

non-uniform interrogatories (NUIs) and requests for production (RFPs). These discovery requests included, but were not limited to, responses to Plaintiff's NUI no. 13 "describing in detail all evidence and reasons which support any denials or affirmative defenses set forth in Defendants' Answer." (*Id.* at ¶17.) Defendants responded with detailed explanations of Plaintiff's position and duties and manager, which is also set forth above, including primary duties exercising discretion and independent judgment. (*Id.*)

Plaintiff issued no other discovery requests and took no depositions at all in this case. Defendants, on the other hand, supplemented their Mandatory Initial Discovery Reponses and incorporated all pleadings and discovery, and issued supplemental discovery responses in November 2018.[2] In their supplemental responses, Defendants produced nearly 400 additional documents, including Plaintiff's W-2's showing his earnings each year. (*Id.* at ¶¶18-19.)

As an exempt management employee, Plaintiff was paid the annual salary of $41,600.00 at all relevant times. (*Id.* at ¶20.) In 2015, Plaintiff received $41,600.00 in base salary, plus $100.00 in incentive pay, for a total of $41,700.00. (*Id.*) In 2016, Plaintiff was paid $41,600.00 in base salary, plus $2,665.00 in incentive and bonus pay, for a total of $43,765.00. (*Id.*) In 2017, Plaintiff was paid $41,600.00 in base salary, plus $5,822.50 in incentive pay, for a total of $47,422.50. (*Id.*) Plaintiff's total earnings from Defendants between 2015 and 2017 was $132,887.50. (*Id.*)

## II.   LEGAL STANDARD.

Plaintiff bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the record tells two different stories, "credibility determination, the weighing of evidence and the drawing of inference from the facts are the function of the jury . . . ."

---

[2] Defendants were unable to depose Plaintiff because he refused to appear in Arizona for his deposition. Defendants did not have the resources to cover the expenses required to travel and complete Plaintiff's deposition in Indiana, where he now lives, and thus were unable to depose him prior to trial.

5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must also resolve any factual issues of controversy in favor of the nonmoving party where the facts specifically attested by that party, as in this case, contradict facts specifically attested by the moving party. *See Manning v. Tacoma Public Schools*, 2007 WL 2495138 *6 (W.D. Wash. 2007). Defendants agree with Plaintiff on one issue, that the Court should only grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law'." (Motion at 2 (quoting *Anderson v. Liberty Lobby*, 477 U.S. at 247).)

Here, it is literally without question that Defendants have produced, through pleadings, verified discovery responses, more than 1,200 produced documents, and the affidavit of Connie Schwichtenberg, sufficient facts and evidence supporting their defenses in this case, including that Plaintiff was an exempt employee not entitled to overtime. Moreover, Defendants have produced sufficient *admissible* evidence that would allow a jury to, if not mandate, a verdict in their favor. Plaintiff's summary judgment motion must be denied.

**III. ARGUMENT**

The Fair Labor and Standards Act requires that employers pay employees one and one half times their regular hourly rate of pay for hours worked in one week in excess of 40. *See* 29 U.S.C. § 207. Bona fide executive, administrative and professional employees, however, are exempt from overtime pay. *See* 29 U.S.C. § 213(a)(1). Plaintiff worked for Defendants in the position of Program Manager and was an exempt administrative employee.

To be a bona fide administrative employee, the employee must:

1) be compensated on a salary or fee basis at a rate of not less than $455 per week;

  2)  have as a primary duty the performance of office or non-manual work directly related to management policies or general business operations of his employer or her employer's customers; and

  3)  have a primary duty which includes the exercise of discretion and independent judgment.

*See* 29 C.F.R. §541.200(a).[3]

### A. PLAINTIFF WAS A MANAGER FOR DEFENDANTS AT ALL RELEVANT TIMES AND EXEMPT FROM THE OVERTIME PROVISIONS OF THE FLSA.

To qualify under the administrative exemption, an employee must meet both the salary test and the duties test. Plaintiff does not dispute that he met the salary test, even under his theory that he earned a salary of $25,000 per year (Motion at 5), since an annual salary of $25,000.00 amounts to $481.00 per week. Plaintiff's annual salary, however, was $41,600.00 per year, which amounts to $800 per week and it is again undisputed that Plaintiff meets the salary test.

Defendants will therefore focus on whether Plaintiffs' primary duties: 1) consisted of performing office or non-manual work directly related to management policies or general business operations, and 2), included the exercise of discretion and independent judgment. This is known as the two prong "duties test." *See In re Allstate Ins. Co. Fair Labor Standards Litigation*, 2007 WL 2274802 *8 (D. Ariz. 2007.)

---

[3] The Department of Labor revised the regulations at 29 C.F.R §541 with an effective date of January 1, 2020. The 2004 § 541 regulations remain in effect through December 31, 2019, including the $455 per week standard salary level.

7

First, and most importantly, nowhere in Plaintiff's Motion does he dispute that, in his position of Manager, he performed primary duties consisting of non-manual work directly related to management policies and general business operations, nor does he dispute that his duties included discretion and independent judgment. He simply argues that Defendants should not be able to assert their defense. In other words, he does not dispute that his position of Manager satisfied the two- prong duties test. Second, even if he had attempted to dispute the duties test, which he did not, the overwhelming evidence is that the position of Manager, the position he admits that he held (PSOF at ¶16), satisfies the duties test and is exempt.

As to the first prong, the regulations issued by the Secretary of Labor that interpret the administrative exemption explain that:

> [t]he phrase 'directly related to management policies or general business operations of his employer or his employer's customers' describes those types of activities relating to the administrative operations of a business as distinguished from 'production' or in a retail or service establishment, 'sales' work. In addition, to describing the types of activities, the phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers.

29 C.F.R. §541.205(a). As to the second prong, the exercise of discretion and independent judgment generally "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. §541.202(a).

As Manager, Plaintiff's duties and responsibilities were directly related to Defendants' business operations in that it was his responsibility to oversee Berg Group Home and its employees, clients, facilities and services provided to clients. His primary duties required using discretion and judgment to manage the programs for Defendants' disabled clients, including ensuring the program is operating effectively and all activities and documentation required by state rules and guidelines are conducted and maintained, supervising and scheduling all staff to ensure that clients' needs were met, hiring, disciplining and firing of staff, making his own schedule, overseeing the program budget and directing the spending of program money,  and financially binding the company when necessary by entering into contracts for services. His main duties were to promote, service and administer Defendants' business operations. In performing those critical functions, Plaintiffs was required to and did exercise discretion and independent judgment. He received little supervision and was expected to work through and resolve problems themselves. As such, he is an exempt administrative employee and not entitled to overtime pay.

**B.    DEFENDANTS PLED, ALLEGED AND DISCLOSED THEIR EXEMPTION DEFENSE FROM THE OUTSET OF, AND THROUGHOUT, THIS CASE.**

Plaintiff's attempt to preclude Defendants from advancing pled and disclosed defenses is not well taken, especially since Plaintiff has been on notice of Defendant's theory that Plaintiff is an exempt employee and thus not entitled to overtime as of Defendants' first filing in this case. From the day they filed their Answer on March 16, 2018, Defendants expressly pled the defense of "exemption." In their Answer, Defendants affirmatively denied Plaintiff's alleged "primary job duties" as set forth in

9

1 his First Amended Complaint and also denied that Plaintiff was a "non-exempt
2 employee." Defendants again pled and identified their defense of "exemption," and
3 specifically "administrative exemption," in the parties' Joint Case Management Report,
4 filed with this Court on May 14, 2018.

5     Less than a month after filing the Joint Case Management Report, Defendants
6 provided Plaintiff with even more detailed factual bases for the administrative exemption
7 defense through verified discovery responses to Plaintiff's non-uniform interrogatories
8 (NUIs) and requests for production (RFPs). Defendants responded with detailed
9 explanations of Plaintiff's position and duties and manager, which are set forth herein,
10 including primary duties exercising discretion and independent judgment that support
11 Defendants' claim that Plaintiff was administratively exempt. As such, Plaintiff has
12 been on notice of Defendants' defense that Plaintiff's position as Manager was exempt,
13 and subject to the "administrative exemption," throughout this entire case. There is no
14 basis for precluding Defendants from continuing to advance their defense that Plaintiff
15 was exempt.

16     Plaintiff questionably relies on *Magnana v. Commission of the North Mariana*
17 *Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997) (Motion at 8) in arguing that Defendants
18 should be precluded from continuing to their defense of exemption. In *Magnana,* the
19 court merely held that is was error for the district court to grant summary judgment
20 without first determining an affirmative defense raised for the first time in a summary
21 judgment motion was prejudicial to the plaintiff. *Id*. at 1446. The facts in the present
22 case are nothing like *Magnana* since more than a year prior to summary judgment
23 briefing Defendants had already affirmatively pled, alleged, disclosed and identified
24 their defense of exemption and administrative exemption in their Answer, the parties'
25 Joint Case Management Report, and in twenty-one pages of verified responses to NUIs.

26     Lastly, Plaintiff's attempt to compare their failure to disclose 17 material
27 witnesses until May 2019, two weeks before the discovery cut-off, to Defendant's
28 pleading and identifying their exemption defense since the beginning of this case, is

entirely without merit. There is literally nothing remotely comparable between Defendant's pled and disclosed defenses and Plaintiff's unreasonable and inexplicable delay until the close of discovery to disclose 17 "material" witnesses that he planned to call at trial. Plaintiff has had since April 2018 to conduct discovery on Defendants' defenses, including the defense that Plaintiff's position was exempt, and Plaintiff in fact did conduct extensive discovery on the issue through 18 NUIs and 15 RFPs. (See Plaintiff's SOF, Exhibits 1 and 3.) Defendants responded to each of the discovery requests issued in June of 2018. Plaintiff has suffered no prejudice of any kind and there is no rational comparison between Plaintiff's unreasonable delays and Defendants' full, timely and complete disclosure regarding its defenses.

### C. PLAINTIFF'S CALCULATION OF UNPAID OVERTIME IS WITHOUT SUPPORT AND CONTRADICTED BY OFFICIAL WAGE DOCUMENTATION.

Plaintiff also claims that, based upon his own self-serving spreadsheet and wage calculations, he is owed $37,058 in overtime wages. (Motion at 5-6.) As previously stated, Plaintiff is not entitled to any overtime because he was exempt as a matter of law. Yet even if it were assumed for purposes of this motion that he was entitled to overtime, which he was not, he earned and was paid more than he claims he is owed in unpaid overtime. Nowhere in Plaintiff's motion does he cite or even mention what he was actually paid as earnings, therefore, his "spreadsheet" of alleged unpaid wages is meaningless.

Under Plaintiff's calculation, he was owed $25,000.00 in annual salary for 2015, 2016 and 2017. He also claims that he is owed $37,058.44 in unpaid overtime over the course of the same three years. The total owed for salary and overtime, under his calculation, is therefore $112,058.44[4]. According to Plaintiff's official W-@ Form for the same time period, Plaintiff actually earned $132,887.50 from 2015-2017. Therefore, Plaintiff was paid *more* than he now claims he is owed between salary and

---

[4] ($25,000 x 3 = $75,000 + $37,058.44 = $112,058.44)

11

alleged overtime amounts. Plaintiff's calculations, spreadsheet and tables are not based in any facts and are meaningless since he earned more than he is now claiming is owed.

### D. PLAINTIFF IS NOT ENTITLED TO LIQUIDATED DAMAGES AND FAILS TO DEMONSTRATE THAT ANY FLSA VIOLATION OCCURRED, MUCH LESS THAT A VIOLATION WAS WILLFUL.

As previously stated, Plaintiff has failed to demonstrate that any violation of the FLSA's overtime requirements occurred. Even if he had, which he has not, or even if this Court determines that an issue of fact exists as to Plaintiff's alleged violation, Defendants acted in subjective good faith and worked to adhere to the requirements of the FLSA. As such, liquidated damages are inappropriate.

A district court has the discretion to decline to award liquidated damages or to if the employer shows that it acted in subjective good faith and had reasonable grounds for believing its conduct did not violate the FLSA. *See Flores v. City of San Gabriel*, 824 F.3d 890, 904-905 (9th Cir. 2016). "Good faith is an honest intention to ascertain what the FLSA requires and to act in accordance with it." *Local 246 Utility Workers Union of America v. Southern California Edison Co.,* 83 F.3d 292, 298. Even if liquidated damages are the "norm," an employer can satisfy the "good faith" showing if it "had secured some objective authority, or at the very least sought advice" for the purpose of determining whether overtime is owed." *Chao v. A-One Med. Svcs, Inc.,* 346 F.2d 908, 920 (9th Cir. 2003).

Here, Defendants carefully and thoroughly determined Plaintiff's classification as administratively exempt and not entitled to overtime. The position of Manager and compensation for the position was established prior to Plaintiff's employment and promotion. Defendants determined that it was exempt by outlining the duties and responsibilities for the position and comparing them with the data provided by the Department of Labor as to exempt employees and factors required to be exempt. Defendants also sought and relied upon the advice of counsel.

1    Furthermore, Plaintiff has fallen far short of demonstrating that Defendant's
2 alleged violation was willful, giving rise to a three-year statute of limitations instead of
3 two. Unlike double damages, the three years statute of limitations is not the norm.
4 The employer's conduct is deemed willful under § 255 only if there is evidence that the
5 employer knew its conduct violated the FLSA or recklessly disregarded whether it was
6 violating the FLSA. Thus, "the party claiming an exception to the normal period bears
7 the burden of showing the violation was willful." *Nelson v. Waste Mgmt. of Alameda*
8 *Cnty, Inc.,* 33 Fed. Appx. 273, 274 (9th Cir. 2002) (*citing* 29 U.S.C. § 255(a)). Mere
9 negligence by the employer in determining its legal obligation is not sufficient. *Id.*

10    Plaintiff admits that (Motion at 7) the determination of willfulness is a mixed
11 question of law and fact. *See Alvarez v. IBP, Inc.*, 339 F. 3d 894, 908 (9th Cir. 2003).
12 Plaintiff is unable to demonstrate willfulness as a matter of law by merely pointing to a
13 prior unrelated complaint filed against Defendants alleging violation of the FLSA. The
14 complaint was voluntarily dismissed by the plaintiffs and no findings or judgment was
15 ever reported, entered or made. Thus, the complaint serves as merely allegations,
16 nothing more.

17    In addition, the factual allegations in that complaint, that hourly paid
18 caregiver/driver employees were not paid overtime, are nothing like the factual
19 allegations here where Plaintiff alleges that as a salaried Program Manager, he is entitled
20 to overtime. Plaintiff was never paid hourly, and never reported or complained to
21 Defendants while employed that he should be or was denied overtime. He made his
22 own schedule, which varied week to week, and was paid an annual salary of $41,600.00.
23 Plaintiff fails to demonstrate, as a matter of law, that the alleged violation of the FLSA
24 was willful.

25 **IV. CONCLUSION**

26    For the foregoing reasons, Defendants respectfully request that this Court deny
27 Plaintiff's motion for summary judgement in its entirety.

28    RESPECTFULLY SUBMITTED this 1st day of October, 2019.

**BURCH & CRACCHIOLO, P.A.**

By: */s/ Susanne E. Ingold*
    Susanne E. Ingold
    702 E. Osborn Road, Suite 200
    Phoenix, AZ 85014
    *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 1, 2019 I electronically transmitted the attached document to the District Court clerk's office using the CM/ECF System for filing. If registered, a transmittal of the attached document was provided to the following registrants. A copy was provided to the following:

Michael Zoldan, Esq.
Jason Barrat, Esq.
Jessica Miller, Esq.
James Weiler, Esq.
Zoldan Law Group, PLLC
14500 N. Northsight Blvd., Suite 133
Scottsdale, AZ 85260
*Attorneys for Plaintiff*

By: */s/ Holly Hommel*